**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1841

DAVID NUNEZ-VASQUEZ, a/k/a David Nunez,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

_____

AMERICAN IMMIGRATION COUNCIL; IMMIGRANT DEFENSE PROJECT; CAPITAL AREA IMMIGRANTS' RIGHTS COALITION,

Amici Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: March 25, 2020                    Decided: July 13, 2020

Before GREGORY, Chief Judge, FLOYD, and HARRIS, Circuit Judges.

Petition for review granted, order of removal vacated, and remanded with instructions by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Floyd and Judge Harris joined.

Ellis C. Baggs, BAGGS LAW GROUP, PLC, Richmond, Virginia; Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for

Petitioner.  Joseph H. Hunt, Assistant Attorney General, Civil Division, Mary Jane Candaux, Assistant Director, Nicole J. Thomas-Dorris, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Trina Realmuto, Kristin Macleod-Ball, AMERICAN IMMIGRATION COUNCIL, Brookline, Massachusetts; Nancy Morawetz, WASHINGTON SQUARE LEGAL SERVICES, INC., New York, New York, for Amici American Immigration Council and Immigrant Defense Project.  Samantha Hsieh, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Amicus Capital Area Immigrants' Rights Coalition.

———————————

GREGORY, Chief Judge:

David Nunez-Vasquez seeks review of the Board of Immigration Appeals ("BIA") finding that he was removable because he had been convicted of two crimes involving moral turpitude ("CIMT")—a conviction for leaving an accident in violation of Va. Code Ann. § 46.2–894 and a conviction for use of false identification in violation of Va. Code Ann. § 18.2–186.3(B1). We hold that neither conviction is categorically a crime involving moral turpitude. We therefore grant Nunez-Vasquez's petition for review, vacate the BIA's order of removal, order the Government to return Nunez-Vasquez to the United States, and remand to the BIA for further proceedings.

I.

Nunez-Vasquez, a citizen of Mexico, entered the United States in 2002. In November 2012, Nunez-Vasquez was convicted of violating Va. Code Ann. § 18.2–186.3(B1), which forbids the use of identification documents or identifying information of another person to avoid summons, arrest, prosecution, or to impede a criminal investigation ("identity theft conviction"). In December 2012, Nunez-Vasquez was placed in removal proceedings and charged for being present in the United States without being admitted or paroled. Nunez-Vasquez conceded removability and applied for cancellation of removal or, alternatively, voluntary departure.

In August 2018, while his removal proceedings were pending, Nunez-Vasquez was convicted for leaving the scene of an accident in violation of Va. Code Ann. § 46.2–894

3

("failure-to-stop conviction"[1]). In January 2019, at the hearing for Nunez-Vasquez's application for cancellation of removal, the Department of Homeland Security ("DHS") moved to pretermit Nunez-Vasquez's application arguing that Nunez-Vasquez's prior convictions qualified as CIMTs, which would render him ineligible. The Immigration Judge ("IJ") determined that Nunez-Vasquez's identity theft conviction and his failure-to-stop conviction were CIMTs and denied his application for cancellation of removal. The IJ declined to address the discretionary issue with respect to voluntary departure because Nunez-Vasquez was no longer eligible given the IJ's conclusion regarding CIMTs.

In a single member decision, the Board of Immigration Appeals affirmed the IJ's decision. The BIA first concluded that his failure-to-stop conviction was a CIMT because leaving the scene of an accident with knowledge that the accident resulted in injury or damage was "'[c]ontrary to the accepted rules of morality and the duties owed between persons or to society in general.'" A.R. 5 (quoting *Matter of Ortega-Lopez*, 26 I. & N. Dec. 99, 100 (BIA 2013)). The BIA also concluded that his identity theft conviction was categorically a CIMT because each subsection of the statute required either "intent to defraud" or "turpitudinous conduct." A.R. 5. Nunez-Vasquez also argued that the term "crime involving moral turpitude" was unconstitutionally vague, but the BIA determined

---

[1] Va. Code § 46.2–894 is titled "Duty of driver to stop, *etc.*, in event of accident involving injury or death or damage to attended property; penalty." (emphasis added). As explained later in this opinion, a defendant can be convicted of a violation Va. Code § 46.2–894 for more than failing to stop after an accident. For purposes of this opinion, we will refer to Nunez-Vasquez's conviction under Va. Code § 46.2–894 as the "failure-to-stop conviction" but, as required under the categorical approach, we do not make any specific factual finding as to what Nunez-Vasquez did to be convicted under this statute.

it lacked jurisdiction to rule on the constitutionality of the Immigration Naturalization Act ("INA"). A.R. 3.

After the BIA's decision, DHS quickly began the process of removing Nunez-Vasquez. On August 6, 2019, Nunez-Vasquez timely petitioned this Court for review, but did not request a stay of removal. Nunez-Vasquez filed a motion for stay of removal at approximately 4:50 p.m. ET on August 13, 2019. However, the process to remove Nunez-Vasquez had already begun.

On appeal to this Court, Nunez-Vasquez argues that the BIA erred in finding that his convictions are CIMTs. Nunez-Vasquez also asks this Court to grant his motion for stay of removal or alternatively, order the Government to facilitate his return to the United States.

II.

Where, as here, the Board issued its own decision without adopting the IJ's opinion, the Court reviews only the BIA's decision. *Martinez v. Holder*, 740 F.3d 902, 908 (4th Cir. 2014), *as revised* (Jan. 27, 2014). The BIA's decision constitutes the final order of removal. *Id.*

We now turn to the merits of Nunez-Vasquez's argument. Nunez-Vasquez poses two questions of law: (1) whether the BIA erred in holding that his failure-to-stop conviction categorically qualifies as a CIMT; and (2) whether the BIA erred in holding that his identity theft conviction categorically qualifies as a CIMT. We review each inquiry de

5

novo. *See Sotnikau v. Lynch*, 846 F.3d 731, 735 (4th Cir. 2017) (citing *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014)).

A.

In answering these questions, we first consider what deference, if any, this Court owes to the BIA. The BIA's legal conclusion that Nunez-Vasquez's convictions are categorically CIMTs involves "two interpretative questions." *Ramirez v. Sessions*, 887 F.3d 693, 701 (4th Cir. 2018). First, the Court must determine "what the term 'moral turpitude' means in the INA." *Id.* at 702. Because the term "moral turpitude" is ambiguous, under *Chevron*, we defer to the BIA's reasonable construction of the term and definition of the types of conduct it encompasses. *Mohamed*, 769 F.3d at 889. Second, the Court must determine whether the state statute of conviction necessarily involves the type of conduct defined to be morally turpitudinous. *Ramirez*, 887 F.3d at 702. We do not owe any deference on this question to the BIA. *Soliman v. Gonzales*, 419 F.3d 276, 281 (4th Cir. 2005) ("[W]e need not accord deference to the BIA's ultimate finding that [petitioner's] particular offense was an aggravated felony, which involves . . . an interpretation of Virginia criminal law.").

Irrespective the deference owed to each of these interpretative questions, non-precedential opinions by the BIA do not carry the force of law and, thus, are ineligible for *Chevron* deference. *Ramirez*, 887 F.3d at 702; *Martinez v. Holder*, 740 F.3d 902, 909–10 (4th Cir. 2014). Precedential BIA opinions must be issued by a three-member panel. 8 C.F.R. § 1003.1(g). Here, the BIA's decision was issued by one member and thus, does not carry the force of law.

6

However, when single-member, nonprecedential BIA opinions rely on a precedential BIA opinion, we determine whether the *precedential* opinion is apposite and warrants deference. *Sijapati v. Boente*, 848 F.3d 210, 215 (4th Cir. 2017); *Larios-Reyes v. Lynch*, 843 F.3d 146, 155 (4th Cir. 2016); *Ramirez*, 887 F.3d at 702. Thus, we must first consider the precedential BIA decisions on which the BIA opinion in this case relied and "whether and to what extent [they] impact[] our review of [Nunez-Vasquez's] case." *Amos v. Lynch*, 790 F.3d 512, 519 (4th Cir. 2015).

As to Nunez-Vasquez's failure-to-stop conviction, the BIA referenced *Matter of Ortega-Lopez* to conclude that "[a] driver who leaves the scene of an accident in which he is involved and does so with knowledge that the accident resulted in injury or damage is acting 'contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" A.R. 5 (quoting *Matter of Ortega-Lopez*). The BIA opinion in this case does not rely on the reasoning of *Matter of Ortega-Lopez*, but rather just quotes the part that defines moral turpitude. We defer to the BIA's reasonable construction of the definition of moral turpitude but since the BIA opinion here only relies on a precedential decision for the definition of moral turpitude, and not the reasoning, *Matter of Ortega-Lopez* is not eligible for *Chevron* review.

As to Nunez-Vasquez's identity theft conviction, the BIA relied on its precedential decisions in *Matter of Zaragoza-Vaquero*, 26 I. & N. Dec. 814, 816 (BIA 2016), *Matter of Jurado-Delgado*, 24 I. & N. Dec. 29 (BIA 2006), and *Matter of Flores*, 17 I. & N. Dec. 225, 228-230 (BIA 1980). Thus, we must determine whether these opinions are entitled to *Chevron* deference.

7

To begin, *Matter of Zaragoza-Vaquero* is easily distinguishable because the federal statute at issue in that case dealt with criminal copyright infringement, an issue unrelated to Nunez-Vasquez's identity theft conviction.[2] 26 I. & N. Dec. 814 (BIA 2016). Thus, it would be unreasonable for the BIA to rely on *Matter of Zaragoza-Vaquero* to conclude that the identity theft conviction is a CIMT. Similarly, *Matter of Flores* and *Matter of Jurado-Delgado* are distinguishable because they deal with convictions for fraudulently and deliberately obstructing the government or a government entity. *Ramirez*, 88 F.3d at 703 ("Thus, the *Matter of Jurado-Delgado* line of precedent merely determined that conduct involving 'deceit, graft, trickery, or dishonest means' is morally turpitudinous."). In contrast, Nunez-Vasquez's identity theft conviction does not require an intent to deceive or obstruct the government. Our sister circuits are in accord that obstructing the government or a governmental function involves moral turpitude. *See e.g.*, *Omagah v. Ashcroft*, 288 F.3d 254, 262 (5th Cir. 2002) ("[A]lmost all other courts have held that intentionally deceiving the government involves moral turpitude.").[3]

In *Matter of Flores*, the BIA determined that a conviction for falsifying immigration papers under 18 U.S.C. § 1426(b) qualified as a CIMT. 17 I. & N. Dec. at 225. This was

---

[2] It appears the BIA relied on *Matter of Zaragoza* for the proposition that crimes that require intent to defraud are CIMTs. 26 I. & N. at 816.

[3] *See also Daibo v. Att'y Gen.*, 265 Fed.Appx. 56, 60-62 (3rd Cir. 2008) (unpublished) (holding that knowingly making false statements on ATF forms was a CIMT because it "obstructed an important government function"); *Rodriguez v. Gonzales*, 451 F.3d 60, 63-64 (2d Cir. 2006) (relying on *Matter of Flores* to hold that knowingly making false statements in a passport application was a CIMT because it involved "deceit and an intent to impair the efficiency and lawful functioning of the government").

because although intent to defraud was not an explicit element of the statute, "crimes in which fraud [is] an ingredient have always been regarded as involving moral turpitude." *Id.* at 228. The BIA reasoned that "[i]n cases where fraud of the government has been charged, we have held that the government need not have been cheated out of money or property in order for the crime to involve moral turpitude. *It is enough to impair or obstruct an important function of . . . the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means*." *Id.* at 229 (emphasis added).

Similarly, in *Matter of Jurado-Delgado*, the BIA determined that "a conviction for making false statements to a government official 'with intent to mislead a public servant in performing his official function' involved moral turpitude." 25 I. & N. Dec. at 33-35. The "perpetrator must make misleading statements with an intention to disrupt the performance of a public servant's official duties." *Id.* at 35. In rejecting petitioner's argument that the misleading statements were not made under oath, the BIA reasoned that an "intent to mislead [] is the controlling factor." *Id.* at 35.

By contrast, Va. Code Ann. § 18.2–186.3(B1) does not require an intent to deceive the government or obstruct a governmental function. Indeed, someone can violate the statute by misleading a private person. *Garcia v. Commonwealth*, No. 0831–17–2, 2018 WL 3027010, at *4 (Va. Ct. App. June 19, 2018) (describing how a "person who gave false identification to someone who was not a 'law enforcement officer,' such as a loss prevention manager at a store investigating a shoplifting incident, would violate" Va. Code Ann. § 18.2–186.3(B1)). Moreover, while the identity theft statute provides that a violation

9

can occur when a perpetrator uses the identification of another person to avoid arrest or to impede a criminal investigation, not every arrest or criminal investigation is performed by the government or a government official. *See id.* Accordingly, although the BIA opinion in this case relied on precedential opinions, those precedential opinions are also not afforded *Chevron* deference. Accordingly, the BIA's opinion in this case, which relied on them, is also not afforded *Chevron* deference.

Because the BIA's decision in the case before us is not afforded precedential weight, we determine the amount of deference owed to the BIA's opinion using the principles of deference outlined in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1994). *Amos*, 790 F.3d at 521. The degree of deference "given to a BIA decision 'hinges on the thoroughness evident in the BIA's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade.'" *Ramirez*, 887 F.3d at 703 (alteration in original) (describing *Skidmore* deference). Here, the BIA does not provide any analysis as to either conviction before it summarily states that both convictions are CIMTs. As to the failure-to-stop conviction, it purports to outline Virginia law and incorrectly states that Virginia law requires knowledge that the accident resulted in injury or damage, when Virginia law does not require such knowledge. *Clarke v. Galdamez*, 789 S.E.2d 106, 111 (Va. 2016) (noting that the failure-to-stop statute requires that the "defendant knew or should have known that property was damaged by the accident"). As to the identity theft conviction, the BIA simply recites the elements of the statute but does not provide any analysis as to why the statute was categorically a CIMT.

10

Accordingly, the BIA decision lacks the "power to persuade" and also is not entitled *Skidmore* deference.

We defer to the BIA's reasonable interpretation of the term "crime involving moral turpitude." However, we do not defer to the BIA's determination that a conviction under a state statute is a CIMT. And because the non-precedential BIA opinion in this case is not persuasive, we afford it no deference.

B.

Under this framework, we must now determine whether Nunez-Vasquez's failure-to-stop conviction fits within the INA's definition of a CIMT. *Ramirez*, 887 F.3d at 703. When making this determination, we apply the categorical approach, which looks to the elements of the crime rather than the particular conduct underlying the conviction. *Cabrera v. Barr*, 930 F3d 627, 636 (4th Cir. 2019); *see also Descamps v. United States*, 570 U.S. 254, 261 (2013).[4] A violation of Va. Code Ann. § 46.2-894 qualifies as a CIMT if even the minimum conduct needed to violate the statute would involve moral turpitude.

---

[4] If the statute is divisible, meaning the statute "sets out alternate elements that create multiple forms of the criminal offense and a least one form of the offense qualifies—by its elements—as the generic predicate offense," then the modified categorical approach applies. *Martinez v. Sessions*, 892 F.3d 655, 659 (4th Cir. 2018). The modified categorical approach is still an "elements-based one" and not a "facts-based inquiry." *Descamps*, 570 U.S. at 278. Thus, we determine which of the alternative crimes formed the basis of the defendant's conviction before applying this elements-based approach. *Martinez*, 892 F.3d at 659. In this case, we do not apply the modified categorical approach. As to Nunez-Vasquez's failure-to-stop conviction, the statute is not divisible, thus the modified categorical approach cannot apply. As to Nunez-Vasquez's identity theft conviction, the charging documents make clear what subsection of Va. Code Ann. § 18.2–186.3 Nunez-Vasquez was convicted under, therefore we do not need to use the modified categorical approach to determine which of the alternative crimes formed the basis of his conviction.

11

*Ramirez*, 887 F.3d at 704; *see also Larios-Reyes*, 843 F.3d at 152 (noting that the minimum conduct must have a "realistic probability, not a theoretical possibility" of being prosecuted). In other words, "[i]f all permutations of the conduct proscribed by the elements of the offense involve moral turpitude, then the offense categorically qualifies as" as one involving moral turpitude. *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018); *Sotnikau*, 846 F.3d at 735 (noting that if the elements of the crime at issue "can include behavior that does not involve moral turpitude, the crime is not categorically one involving moral turpitude").

The BIA defines "moral turpitude" as behavior "that shocks the public conscience as being inherently base, vile, or depraved." *Ramirez*, 887 F.3d at 704 (citing *Matter of Tobar-Lobo*, 24 I. & N. Dec. 143, 144 (BIA 2007)). It is conduct that is "[c]ontrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Tobar-Lobo*, 24 I. & N. at 143. A CIMT requires "two essential elements: a culpable mental state and reprehensible conduct." *Sotnikau*, 846 F.3d at 736 (citing *In re Ortega-Lopez*, 26 I. & N. Dec. 99, 100 (BIA 2013)). To have the culpable mental state, the crime must have, as an element, an "intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur." *Ramirez*, 887 F.3d at 704 (citing *In re Perez-Contreras*, 20 I. & N. Dec. 615, 619 (BIA 1992)). To meet the reprehensible conduct element, the crime "must involve conduct that not only violates a statute but also independently violates a moral norm." *Id.*; *see Mohamed*, 769 F.3d at 888 ("[T]he phrase 'involving moral turpitude' . . . refers to more than simply the wrong inherent in violating the statute. Otherwise the requirement . . . would be superfluous.").

12

The Supreme Court of Virginia has stated that to convict a defendant of a violation of Va. Code Ann. § 46.2–894, a fact-finder must find:

> (1) that the defendant was the driver of a vehicle that he knew was involved in an accident; and (2) that the accident caused property damage or bodily injury; and (3) that the defendant knew or should have known that the property was damaged by the accident; *and* (4) that the defendant failed to do any of the following: (a) stop immediately, (b) render reasonably necessary assistance, or (c) report his identification information to law enforcement or the other person involved in the accident.

*Clarke v. Galdamez*, 789 S.E.2d at 109–110 (emphasis in original).

Here, the failure-to-stop conviction requires no culpable mental state or reprehensible conduct. As to the culpable mental state, Va. Code Ann. § 46.2–894 does not require any showing of intent, nor has the Virginia Supreme Court read an element of intent into the statute; thus, Va. Code Ann. § 46.2–894 cannot have the required culpable mental state to qualify as a CIMT. As the Government acknowledges, the statute does not require actual knowledge that an accident or injury took place, but rather that the perpetrator *knew or should have known* that the accident resulted in injury or property damage. Resp. Br. at 5 n.1; *see also Clarke*, 789 S.E.2d at 111 (The stopping immediately requirement "is predicated on the defendant *knowing* he was involved in an accident that he *knew or should have known* involved personal injury or property damage") (emphasis in original); *Neel v. Commonwealth*, 641 S.E.2d 775, 778 (Va. Ct. App. 2007) ("Knowledge of injury may be imputed to a driver where the fact of personal injury is visible or where the seriousness of the collision would lead a reasonable person to assume there must have been resulting injuries.").

13

That a defendant "should have known that the property was damaged by the accident" suggests that a conviction under this statute would be possible because of a defendant's criminal negligence. *See Conrad v. Commonwealth*, 521 S.E.2d 321, 326 (Va. Ct. App. 1999) (explaining that criminal negligence for an involuntary manslaughter conviction exists when the "offender either knew or should have known the probable results of his acts"). Thus, it appears that criminal negligence is sufficient to obtain a conviction under the statute. *See Sotnikau*, 846 F.3d 731 (4th Cir. 2017) (holding that criminal manslaughter was not a CIMT because a conviction could be predicated on criminal negligence). Accordingly, Va. Code Ann. § 46.2–894 does not have the required culpable mental state to be a CIMT.

Not only does Nunez-Vasquez's failure-to-stop conviction lack the required culpable mental state, there is no morally reprehensible conduct. The Supreme Court of Virginia has made it clear that it is possible for a defendant to be guilty of violating Va. Code Ann. § 46.2–894 for merely failing to satisfy the reporting requirements in the statute, even if the defendant remained at the scene of the accident. *Butcher v. Commonwealth*, 838 S.E.2d 538 (Va. 2020). The Government does not argue that failing to comply with the reporting requirements categorically violates a social norm.[5] And for good reason. We cannot see how failing to comply with the reporting requirements (*e.g.,* failing to report one's name, address, driver's license number, and vehicle registration number) categorically violates a social norm. Failure to comply with the reporting requirements is

_____

[5] To be clear, in their briefing, the Government does not make any arguments as to whether Nunez-Vasquez's failure-to-stop conviction involves reprehensible conduct.

14

not behavior "that shocks the public conscience as being inherently base, vile, or depraved." *Ramirez*, 887 F.3d at 704. Because it is a "realistic probability" that such minimum conduct could be prosecuted, Va. Code Ann. § 46.2–894 is not a CIMT. *Larios-Reyes*, 843 F.3d at 152.

C.

Because we find that Nunez-Vasquez's failure-to-stop conviction is not a CIMT, we now turn to whether his identity theft conviction is a CIMT.

1.

Here, the BIA assumed that the identity statute was divisible by subsection and then concluded that the entire statute categorically involved moral turpitude. A.R. 5 ("Subsection A explicitly requires 'intent to defraud' and subsections B and B1 also require turpitudinous conduct."). Although the BIA determined that all of Va. Code Ann. § 18.2–186.3 was a CIMT, the charging documents clearly indicate Nunez-Vasquez was convicted under subsection (B1). A.R. 243. Accordingly, we now turn to whether § 18.2–186.3(B1) categorically matches the generic federal definition of a crime involving moral turpitude.

Va. Code Ann. § 18.2–186.3(B1) provides that "[i]t shall be unlawful for any person to use identification documents or identifying information of another person, whether that person is dead, or alive, or of a false or fictitious person, to avoid summons, arrest, prosecution, or to impede a criminal investigation." Regardless of the required culpable

15

mental state,[6] we are not convinced that the offense has the required moral reprehensible conduct to qualify as a CIMT.

The least culpable conduct criminalized by Va. Code Ann. § 18.2–186.3(B1) is not morally reprehensible. For instance, unlike the statutes at issue in *Matter of Flores* and *Matter of Jurado-Delgado*, Va. Code Ann. § 18.2–186.3(B1) does not require perpetrators to intend to impair or obstruct a government function through deceit because an individual can violate the statute by misleading a private person. *Garcia*, 2018 WL 3027010, at *4. Va. Code Ann. § 18.2–186.3(B1) does not require perpetrators to misidentify themselves to a public official or a police officer. *Id.* In Virginia, it is a violation of Va. Code Ann. § 18.2–186.3(B1) to provide false identification to someone who is not law enforcement, such as a "loss prevention manager at a store investigating a shoplifting accident." *Id.* This is because an arrest or criminal investigation does not have to be conducted by the government or a governmental entity. Indeed, it is a separate crime to "falsely identif[y] [oneself] to a law-enforcement officer with the intent to deceive the law enforcement as to his real identity after having been lawfully detained and after being requested to identify himself by a law-enforcement officer." *See* Va. Code Ann. § 19.2–82.1; *Garcia*, 2018 WL 3027010, at *3 (concluding that Va. Code Ann. § 18.2–186.3(B1) and Va. Code Ann. § 19.2–82.1 are not the same offense). Again, the Government does not explain and we

---

[6] The Virginia Court of Appeals has stated that the statute requires the "intent 'to avoid summons, arrest, prosecution, or to impede a criminal investigation.'" *Garcia v. Commonwealth*, 2018 WL 3027010, at *2 (quoting the statute). In light of this decision, it is possible that the offense has the required culpable mental state to qualify as a CIMT. *See Ramirez*, 887 F.3d at 704.

16

cannot see how misidentifying oneself to a "loss prevention manager at a store investigating a shoplifting accident" is reprehensible conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality." *Garcia*, 2018 WL 3027010, at \*4; *Mohamed*, 769 F.3d at 887.

Further, Va. Code Ann. § 18.2–186.3(B1) does not require a perpetrator to use the name of an actual person, as the statute proscribes the use of the identity of a "false or a fictitious person." In other words, identity theft under the statute does not require that the information actually belong to another person. *Salazar v. Commonwealth*, 789 S.E.2d 779, 783 (2016) (defendant was convicted under Va. Code Ann. § 18.2–186.3 because he "made up" a social security number that turned out to be real).[7]

We are further persuaded by the Ninth Circuit's decision in *Ibarra-Hernandez v. Holder*, 770 F.3d 1280, 1282 (9th Cir. 2014), where the court found that the violation of an identity theft statute through the use of "fictitious person's name—say, Mickey Mouse—and a non-existent Social Security number solely for the purpose of getting a job, and not with the intent to cause loss to anyone" was not a CIMT. The fact that a person could commit a violation through the use of a fictitious person's name and a fake Social Security number was important in the Ninth Circuit's analysis. Similarly, because Va. Code Ann. § 18.2–186(B1) allows for a conviction through the use of the identifying

---

[7] Moreover, it appears to be a "realistic probability" that someone can be convicted under the statute even after they have properly identified themselves. *See* Capital Area Immigrants' Rights Coalition Amicus Brief at 12–13 (detailing the stories of Bianca who properly identified herself but happened to have both her and her sister's driver's license and of Alejandro who handed a police officer his credit card instead of his driver's license and were both convicted for violations under Va. Code § 18.2–186.3(B1)).

17

information of a fictitious person when the perpetrator does not intend to cause loss to anyone, we conclude that such an action does not categorically involve moral turpitude.

The Government relies on *Flores-Molina v. Sessions*, 850 F.3d 1150, 1160–64 (10th Cir. 2017), where the Tenth Circuit laid out a framework to determine whether an offense was a CIMT. In *Flores-Molina*, the Tenth Circuit explained that the "BIA has identified three categories of deceit-related offenses that qualify as CIMTs: (1) offenses containing an explicit fraudulent intent element; (2) offenses containing an inherent fraudulent intent element; and (3) offenses containing a specific intent element." *Id.* at 1160. The Government uses this framework to argue that the Virginia statute at issue falls within the third category of CIMTs, crimes that "involve deception and a specific intent to harm or obtain a benefit at the government's or another person's expense."[8] *Id.* at 1164. We are unconvinced.

---

[8] The Government argues that the use of false identification is reprehensible conduct because it involves deceit. Resp. Br. at 20. It points to *Padilla v. Gonzales*, 397 F.3d 1016, 1019–21 (7th Cir. 2005) *overruled on other grounds* by *Ali v. Mukasey*, 521 F.3d 737, 743 (7th Cir. 2008), where the Seventh Circuit upheld a CIMT determination for the crime of furnishing false information to prevent apprehension because it involved a deliberate deceitful act. Tellingly, the Seventh Circuit went on to analyze *Padilla* in *Arias v. Lynch*, 834 F.3d 823 (7th Cir. 2016), and acknowledged that sometimes the court has used broad language and found that any crime involving "deception" was a CIMT. *Id.* at 828. As the *Arias* court explained, "cases finding crimes of moral turpitude based on deception rely on other aggravating factors, especially actual or intended harm to others. *Id.* (internal citations omitted). In addition to deception, there must be harm to others, which can include obstructing an important government function. *See Blanco v. Mukasey*, 518 F.3d 714 (9th Cir. 2008) (holding that giving false identification to a peace officer was not a CIMT if the only "benefit" to giving the false statement was to impede law enforcement and not to obtain something tangible). Thus, the use of false identification, on its own, is not enough to find that a crime involves moral turpitude. *Accord Flores-Molina*, 850 F.3d at 1169 (explaining that that although courts have sometimes made statements suggesting (Continued)

Even if we deferred to the Tenth Circuit's reasoning, the Government's argument fails. Indeed, *Flores-Molina* supports our conclusion. Interestingly, in *Flores-Molina*, the Tenth Circuit used the framework relied on by the Government to determine that giving false information to a police officer or a city official acting in their official capacity was categorically *not* a CIMT. *Id.* at 1167–69. The Tenth Circuit explained that the specific intent required must be "specific intent to harm or obtain a benefit at the government's or another person's expense." *Flores-Molina*, 850 F.3d at 1164 (citing *Matter of Jurado-Delgado*). The Government has not explained and we cannot see how the intent "to avoid summons, arrest, prosecution, or to impede a criminal investigation" is "specific intent to harm or obtain a benefit at the government's or another person's expense." *Compare* Va. Code Ann. § 18.2–186(B1), *with Flores-Molina*, 850 F.3d at 1164. Additionally, the *Flores-Molina* court found that the minimum conduct proscribed by the statute "need not involve fraud, cause harm to the government or anyone else, obtain a benefit for the speaker, or be given with the intent to achieve any of these ends." *Id.* at 1168. Similarly, the statute at issue here need not involve fraud or harm to the government.

Because a conviction under Va. Code Ann. § 18.2–186.3(B1) does not require morally reprehensible conduct, Nunez-Vasquez's identity theft conviction is not a CIMT.

---

that deception alone is sufficient to determine a conviction is a CIMT, a closer look at the decisions demonstrates that they actually look towards the three categories of deceit-related offenses outlined in the opinion).

19

III.

Finally, Nunez-Vasquez asks this Court to order the Government to facilitate his return after granting his petition for review.[9]  As we explained in *Ramirez*:

> Under an Immigration and Customs Enforcement (ICE) policy directive, "[a]bsent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her [petition for review] was pending, ICE will facilitate the alien's return to the United States if either the court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings."  Among other circumstances, an alien's presence is necessary when a court orders his or her presence and restores him to the status he had before removal.

887 F.3d at 706; *see also* U.S. Immigration and Customs Enforcement Policy Directive Number 11061.1, *Facilitating the Return to the United States of Certain Lawfully Removed Aliens* (Feb. 24, 2012).[10]

_____

[9] Nunez-Vasquez also asked this Court to retroactively grant his stay of removal motion and order the Government to facilitate his return to the United States while his petition for review was pending.  Because the Court is granting his petition for review, we need not answer this question.  Further, this Court has adopted Standing Order 19-01 which provides:

> Upon the filing of an initial motion for stay of removal or deportation in an immigration case, the clerk will enter an administrative order staying removal for a period of 14 days to allow time for responsive filings and to preserve the court's ability to make a considered decision on the motion.  The stay may be vacated or extended by order of the court.

Thus, a petitioner who files a stay motion will not be able to be removed from the United States for a period of 14 days after the filing of such motion.

[10] Under this directive, facilitating Nunez-Vasquez's return would mean the Government "engage in activities which allow a lawfully removed alien to travel to the United States (such as by issuing a Boarding Letter to permit commercial air travel) and, if warranted, parole the alien into the United States upon his or her arrival at a U.S. port of entry."  U.S. Immigration and Customs Enforcement Policy Directive Number 11061.1. (Continued)

Here, we are ordering Nunez-Vasquez's return because his presence is "necessary to effectuate judicial relief" and he was removed from the United States before this Court could rule on his motion to stay. *Ramirez*, 887 F.3d at 706. Thus, we direct the Government to facilitate Nunez-Vasquez's return for the purpose of participating in further proceedings in accordance with Directive 11061.1.

IV.

For the reasons stated above, we conclude that Nunez-Vasquez's failure-to-stop conviction under Va. Code Ann. § 46.2–894 and identity theft conviction under Va. Code Ann. § 18.2–186.3(B1) do not categorically qualify as crimes involving moral turpitude. We therefore grant Nunez-Vasquez's petition for review, vacate the BIA's order of removal, and remand with instructions that the Government be directed to return Nunez-Vasquez to the United States.

*PETITION FOR REVIEW GRANTED, ORDER OF REMOVAL VACATED, AND REMANDED WITH DIRECTIONS*

---

However, this "does not necessarily include funding the alien's travel via commercial carrier to the United States or making flight arrangements for the alien." *Id.*

21