**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1141**

———————

ROBERTO MARIO BELONG,

      Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

      Respondent.

———————

On Petition for Review of an Order of the Board of Immigration Appeals.

———————

Submitted:  November 17, 2023                  Decided:  January 3, 2024

———————

Before DIAZ, Chief Judge, and WILKINSON and HEYTENS, Circuit Judges.

———————

Petition for review granted, order vacated, and remanded with instructions by unpublished opinion. Judge Heytens wrote the opinion, in which Chief Judge Diaz joined. Judge Wilkinson wrote a dissenting opinion.

———————

**ON BRIEF:** Eric H. Singer, LAW OFFICE OF ERIC SINGER, LLC, Washington, D.C.; Timothy W. Davis, LAW OFFICE OF TIMOTHY W. DAVIS, LLC, Baltimore, Maryland, for Petitioner. Brian Boynton, Principal Deputy Assistant Attorney General, Daniel E. Goldman, Senior Litigation Counsel, Rebecca Hoffberg Phillips, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

Unpublished opinions are not binding precedent in this circuit.

TOBY HEYTENS, Circuit Judge:

A provision of Delaware law—which we will call Section 907(1)—makes it a misdemeanor to "impersonate[] another person and do[] an act in an assumed character intending to obtain a benefit or to injure or defraud another person." Del. Code Ann. tit. 11, § 907(1). The question here is whether that offense is a crime involving moral turpitude under the Immigration and Nationality Act. Because under this Court's precedent the answer is no, we grant the petition for review, vacate the Board of Immigration Appeals' order, and remand for further proceedings.

I.

Roberto Belong came to the United States from Suriname with his parents when he was 10 years old. He entered on a visitor's visa, which he admits has long since expired. Belong now has three children of his own, all United States citizens.

In 2014, the Department of Homeland Security sent Belong a notice to appear, alleging he overstayed his visa. Belong conceded he was removable and sought cancellation of removal. The government moved to dismiss Belong's application, arguing he was ineligible for relief because he had been convicted of several crimes involving moral turpitude. See 8 U.S.C. §§ 1227(a)(2)(A)(i), 1229b(b)(1)(C) (generally making the absence of such convictions a requirement for cancellation of removal). The motion identified two Delaware convictions for violating Section 907(1)—although it later became clear Belong had been convicted under the statute four times—and a single conviction for violating a Maryland trademark counterfeiting law.

An immigration judge granted the government's motion, concluding both offenses

2

were crimes involving moral turpitude. The Board of Immigration Appeals upheld that ruling based solely on Belong's Section 907(1) convictions. As a result, only the Section 907(1) question is before us. See, *e.g.*, *Ngarurih v. Ashcroft*, 371 F.3d 182, 188 (4th Cir. 2004) ("Where, as here, the BIA did not adopt the IJ's opinion but offered its own reasons for denying relief, we review the BIA's order rather than the IJ's ruling.").

## II.

This appeal turns on a discrete question of statutory interpretation: Is a violation of Section 907(1) a "crime involving moral turpitude" under 8 U.S.C. § 1227(a)(2)(A)(i)? Under this Court's binding precedent, the answer is no.

## A.

We begin with our standard of review. Deciding whether a particular state-law offense is a crime involving moral turpitude involves "two interpretive questions, one about the Immigration and Nationality Act (INA) and one about [the] state criminal statute." *Ramirez v. Sessions*, 887 F.3d 693, 701 (4th Cir. 2018).

Question one: What does the term moral turpitude mean in the INA? See *Ramirez*, 887 F.3d at 702. On that issue, we grant *Chevron* deference "to the agency's reasonable construction of the term and definition of the types of conduct it encompasses." *Id.*; accord *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (holding Board decisions are eligible for *Chevron* deference). The Board understands crimes involving moral turpitude as having "two essential elements: a culpable mental state and reprehensible conduct." *Matter of Ortega-Lopez*, 26 I. & N. Dec. 99, 100 (B.I.A. 2013). This Court has deferred to that definition. See *Ramirez*, 887 F.3d at 704. "To meet the *mens rea* requirement, the crime

3

must have, as an element, an intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur." *Id.* (citing *Matter of Perez-Contreras*, 20 I. & N. Dec. 615, 619 (B.I.A. 1992)). "To meet the *actus reus* requirement, the crime must involve conduct that not only violates a statute but also independently violates a moral norm." *Id.* (quotation marks removed). And because the question is whether a particular *offense*—rather than a defendant's conduct—is a crime involving moral turpitude, the statute at issue must "*exclusively* criminalize knowing or intentional acts that violate a moral norm." *Id.*

"The second interpretive question is whether the state statute of conviction necessarily involve[s] the type of conduct defined to be morally turpitudinous." *Ramirez*, 887 F.3d at 702. Because the Board has neither been charged with nor has any special expertise in interpreting state statutes, "we do not owe any deference to the" Board on this front. *Id.* Instead, we ask whether "the minimum conduct needed to violate" Section 907(1) inherently involves "moral turpitude" as that term has been understood by the Board and this Court. *Id.* at 704. "To answer this question, we apply the categorical approach, which examines only the statutory elements of the prior offense, not the particular conduct underlying the conviction." *Id.* at 703.

B.

The parties agree the relevant prior offense here is a violation of Section 907(1). That statute says:

4

A person is guilty of criminal impersonation when the person:

> (1) Impersonates another person and does an act in an assumed character intending to obtain a benefit or to injure or defraud another person[.]

Del. Code Ann. tit. 11, § 907(1).

We hold this statute does not create a crime involving moral turpitude. Even if Section 907(1) satisfies the mens rea requirement, it reaches conduct this Court has held is insufficiently "morally reprehensible" to satisfy the actus reus requirement. *Ramirez*, 887 F.3d at 704.

This Court's decision in *Nunez-Vasquez v. Barr*, 965 F.3d 272 (4th Cir. 2020), controls this case. *Nunez-Vasquez* involved a Virginia statute making it "unlawful for any person to use identification documents or identifying information of another person, whether that person is dead, or alive, or of a false or fictitious person, to avoid summons, arrest, prosecution, or to impede a criminal investigation." *Id.* at 284 (quoting Va. Code Ann. § 18.2-186.3(B1)). This Court held that statute was not a crime involving moral turpitude because "[t]he least culpable conduct" it "criminalized" was "not morally reprehensible." *Id.* The Court gave two reasons for this conclusion: because someone could violate the statute by "misleading a private person" and because the statute did "not require a perpetrator to use the name of an actual"—rather than a fictitious—"person." *Id*.

The text of Section 907(1) closely tracks the Virginia statute at issue in *Nunez-Vasquez*. To "use identification documents or identifying information of another person," Va. Code Ann. § 18.2-186.3(B1), is to "[i]mpersonate[] another person and do[] an act in an assumed character," Del. Code Ann. tit. 11, § 907(1). And having the intent "to avoid

5

. . . arrest," Va. Code Ann. § 18.2-186.3(B1), satisfies Section 907(1)'s requirement of acting with an intent "to obtain a benefit." See *Evans v. State*, 212 A.3d 308, 313 (Del. Super. Ct. 2019) (stating an intent of "avoiding arrest on outstanding warrants" has "long been understood as sufficient" to satisfy the statute's "to obtain a benefit" element).

The government offers two arguments why *Nunez-Vasquez* does not control here. Neither is persuasive.

First, the government insists that, unlike the law at issue in *Nunez-Vasquez*, Section 907(1) requires proof of "fraudulent intent." U.S. Br. 28. But the government ignores that Section 907(1) "speaks in the disjunctive." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 786 (4th Cir. 2023). Under Section 907(1), the government can prevail by showing the defendant "intend[ed] to obtain a benefit *or* to injure *or* defraud another person." Del. Code Ann. tit. 11, § 907(1) (emphasis added). We see no reason to doubt that here—as usual—"or" really means "or." And that brings us right back to *Nunez-Vasquez*: Because intent to "avoid[] arrest" qualifies as intent to "obtain a benefit" under Section 907(1), see *Evans*, 212 A.3d at 313, a violation can be shown via proof of the same intent required to sustain a conviction under the Virginia statute in *Nunez-Vasquez*, see 965 F.3d at 284 n.6.

Second, the government asserts Section 907(1) differs materially from the Virginia statute in *Nunez-Vasquez* because a person cannot violate Section 907(1) without assuming the identity of a real person. To be sure, the *Nunez-Vasquez* Court said one reason the Virginia statute reached insufficiently reprehensible conduct is because it did "not require a perpetrator to use the name of an actual person." 965 F.3d at 284. But it is unclear whether

6

that fact was necessary to the outcome in *Nunez-Vasquez*. And regardless of the answer to that question, we cannot say with any confidence the same fact is not present here.

To begin, it is uncertain whether the lack of a real-person requirement was essential to *Nunez-Vasquez*'s holding. As noted earlier, *Nunez-Vasquez* identified two reasons for concluding "[t]he least culpable conduct" reached by the Virginia statute was "not morally reprehensible"—the first of which was that "an individual [could] violate the statute by misleading a private person." 965 F.3d at 284. This Court has acknowledged that deceiving a private person can sometimes be a crime of moral turpitude. See, *e.g.*, *Salazar v. Garland*, 56 F.4th 374, 379 (4th Cir. 2023). But *Nunez-Vasquez* explained such crimes must involve "harm to others" to qualify, and it concluded that deceiving a private person with the intent to evade arrest did not involve the requisite degree of harm. 965 F.3d at 284 n.8.

Section 907(1) requires no greater showing of harm than the Virginia statute in *Nunez-Vasquez*. True, most Section 907(1) charges seem to stem from interactions with law enforcement. See, *e.g.*, *Carney v. State*, No. 47-2007, 2007 WL 2254543, at *1 (Del. Aug. 7, 2007). But nothing in the statutory text excludes those who mislead private individuals, and the government never denies Section 907(1) can be violated by deceiving a private person. See, *e.g.*, *Lloyd v. State*, No. 207-1996, 1996 WL 608456, at *1 (Del. Oct. 15, 1996) (defendant used another person's credit card and signed the victim's name). And, as with the Virginia statute, even deception motivated by an intent to evade arrest violates the Delaware law.

The *Nunez-Vasquez* Court never said whether the two features it identified—the ability to violate the Virginia statute by deceiving a private person and the lack of a real-

7

person requirement—were both necessary to its holding. But we need not resolve that question because we conclude that, at least at the time of Belong's convictions, there was a "realistic probability" a person could be convicted of violating Section 907(1) without misappropriating a real person's identity. *Nunez-Vasquez*, 965 F.3d at 283.

The government disputes this point, citing a 2019 decision of the Delaware Superior Court holding that Section 907(1) requires proof the defendant impersonated an actual person. See *Evans*, 212 A.3d at 310–11. But that decision post-dates Belong's last Section 907(1) conviction by more than seven years, and the *Evans* court acknowledged that "Delaware practitioners and jurists" had long "assumed that the State need only prove that one gave a false name to be convicted." *Id.* at 310.[*] Indeed, the limited pre-*Evans* authority we have been able to locate suggests that Section 907(1) has—in fact—been applied to defendants who impersonated fictitious people. See, *e.g.*, *Crosby v. State*, 824 A.2d 894, 896 (Del. 2003) (per curiam) (defendant named Chris Crosby used name "John Crosby"); *Jackson v. State*, No. 287-2004, 2004 WL 68803, at *1  (Del. Jan. 13, 2004) (defendant named St. Clair Jackson used name "St. Clair Parsons").

The Delaware courts, of course, have "the final word about what a state law means." *Colorado Bankers Life Ins. Co. v. Academy Fin. Assets, LLC*, 60 F.4th 148,  153 (4th Cir. 2023); see generally *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). But that power belongs

---

[*] We reject the government's assertion that Belong failed to exhaust an argument about *Evans*'s timing. The exhaustion requirement applies to "bases for relief" and "general issues" that were not raised below, but not to "specific, subsidiary legal arguments" or "arguments by extension" to those already made. *Ramirez*, 887 F.3d at 700. Belong asked the Board to hold he was eligible for cancellation of removal because Section 907(1) was not a crime involving moral turpitude. Nothing more was required.

exclusively to the highest court of a state, see *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967), and the Delaware Supreme Court has not spoken on this question. We thus need not decide how we would proceed if the state's highest court issued a decision altering the prevailing understanding of the statute's elements after Belong's convictions but before his removal proceedings. Cf. *United States v. Cornette*, 932 F.3d 204, 214–15 (4th Cir. 2019) (analyzing similar question under the Armed Career Criminal Act and suggesting the intervening decision should not be considered); *Matter of Velasquez-Rios*, 27 I. & N. Dec. 470, 474 (B.I.A. 2018) (looking to the pre-amendment version of a state statute when the statute had been amended between the time of the defendant's conviction and later removal proceedings). We hold only that—under the specific circumstances here—there is a "realistic probability" that Section 907(1) could have been applied to conduct *Nunez-Vasquez* holds is not enough to constitute a crime involving moral turpitude. 965 F.3d at 283.

We acknowledge the Third Circuit concluded in an unpublished opinion that Section 907(1) "falls well within the recognized definition of crimes involving moral turpitude" because, "in each instance [the defendant] intentionally engages in dishonest or fraudulent conduct." *Perez-Cobon v. Attorney Gen. U.S.*, 816 Fed. Appx. 718, 722 (3d Cir. 2020) (alterations and quotation marks removed). But the Third Circuit did not elaborate on the basis for that conclusion, and, in any event, that panel was not bound by this Court's published decision in *Nunez-Vasquez*. We try to avoid reaching a different conclusion than our sister circuits whenever possible. At the same time, we are bound by the rule that "one

9

panel cannot overrule another," *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc), and we follow that mandate here.

*      *      *

Belong may well be the sort of person Congress wanted to disqualify from eligibility for cancellation of removal. But under this Court's well-established approach to these matters, we cannot consider Belong's individual conduct. Because Section 907(1) reaches the type of conduct this Court held was insufficient in *Nunez-Vasquez*, that statute does not qualify as a crime involving moral turpitude either. The petition for review is granted, the order of the Board of Immigration Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

WILKINSON, Circuit Judge, dissenting:

My distinguished friends in the majority note that petitioner "may well be the sort of person Congress wanted to disqualify from eligibility for cancellation of removal." What a deft piece of understatement. The petitioner here has shown a penchant for using false identification in violation of Delaware's law against criminal impersonation. He now seeks to cancel his removal from the United States. But those who have committed crimes involving moral turpitude are not permitted to stay. Delaware criminal impersonation is categorically just such a crime, and so I would deny the petition for cancellation.

Petitioner was convicted four times under Title 11, § 907(1) of the Delaware Code, which makes it a crime to "[i]mpersonate[] another person and . . . act in an assumed character intending to obtain a benefit or to injure or defraud another person." The least culpable conduct—impersonating another to obtain a benefit—involves the requisite reprehensible conduct to qualify as a crime involving moral turpitude because fraud is inherent in the offense. And "crimes in which fraud [is] an ingredient have always been regarded as involving moral turpitude." *Kporlor v. Holder*, 597 F.3d 222, 225 (4th Cir. 2010).

That criminal impersonation involves fraud is breathtakingly clear. Indeed, the statute is even found under a subpart titled, "Other Frauds and Cheats." And to violate the statute, the petitioner not only had to assume the identity of another person, *see Evans v. State*, 212 A.3d 308, 310–11 (Del. Super. Ct. 2019), he had to do so for the purpose of obtaining a benefit. Contrary to the majority's position, this deplorable conduct involves

11

fraud just as assuming a person's identity to injure or defraud someone invariably does. *See Perez-Cobon v. Att'y Gen.*, 816 F. App'x 718, 721 (3d Cir. 2020).

Petitioner's reliance on *Nunez-Vasquez v. Barr*, 965 F.3d 272 (4th Cir. 2020), is misplaced. He argues that our recognition that the use of false identification there was not enough to find moral turpitude means that a violation of § 907(1) is insufficient to preclude cancellation of his own removal. But we have also recognized that, as here, such "fraud can provide the basis for a finding of moral turpitude." *Salazar v. Garland*, 56 F.4th 374, 379 (4th Cir. 2023) (distinguishing *Nunez-Vasquez* to find that Virginia identity theft was a crime involving moral turpitude because "crimes in which fraud was an ingredient have always been regarded as involving moral turpitude"). And all violations of § 907(1) inherently involve fraud.

The Supreme Court has noted that courts have, "without exception," included fraud crimes as "within the scope of moral turpitude." *Jordan v. De George*, 341 U.S. 223, 229, (1951). And we have done the same. *Kporlor*, 597 F.3d at 225 ("[C]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude.") (quoting *Jordan*, 341 U.S. at 232); *Lasri v. Barr*, 764 F. App'x 382, 383 (4th Cir. 2019) (per curiam) (same); *Babafunmi v. United States*, 210 F.3d 360, *1 (4th Cir. 2000) (table decision) ("Crimes of fraud have generally been held to involve moral turpitude."); *see also Ramirez v. Sessions*, 887 F.3d 693, 698 (4th Cir. 2018), *as amended* (June 7, 2018) ("[O]bstruction of justice . . . is not a [crime involving moral turpitude] because it may be committed without fraud, deception, or any other aggravating element that shocks the public

12

conscience."). I do not think the majority is free to ignore this long line of consistent precedent.

Indeed, the Third Circuit—which has jurisdiction over the State of Delaware—has already determined that § 907(1) constitutes a crime involving fraud, and hence, moral turpitude. *See Perez-Cobon*, 816 F. App'x at 721. That's because, "[w]hether a person impersonates another to 'obtain a benefit,' 'injure,' or 'defraud,' in each instance that person intentionally engages in dishonest or fraudulent conduct." *Id*. Petitioner criticized the Third Circuit's lack of explanation for its moral-turpitude finding, but no great explanation was needed when the answer is so obvious. The Tenth Circuit has held that Colorado's similar impersonation statute was a crime involving fraud, and hence, moral turpitude for the same reason. *Beltran-Rubio v. Holder*, 565 F. App'x 704 (10th Cir. 2014).

The majority thus creates a clear circuit conflict. But uniformity in immigration law has always been important. Uniformity ensures that all individuals unlawfully residing in the United States are treated the same way and avoids favoring immigrants living in some regions of America over immigrants living in others. Yet the majority stakes out a position of disunity in a field that veritably cries out for accord.

We are one country, and removal from its sovereign borders should be governed by one law. The law here is as straightforward as it is longstanding. Crimes that involve fraudulent conduct likewise involve moral turpitude. Petitioner was convicted not once, not twice, but four times for criminal impersonation. If this is not fraudulent and turpitudinous, then I cannot fathom what is.

13

With all respect to two fine colleagues, I would uphold the Board and deny the petition.