MATTER OF BAILIE

In DEPORTATION Proceedings

A-8801025

*Decided by Board August 5, 1964*

A conviction for drawing a check with insufficient funds in violation of section 21-554, Kansas General Statutes (1949), is not a conviction of a crime involving moral turpitude.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4) (1958)]—Convicted of two crimes involving moral turpitude after entry—Selling mortgaged property, violation of check law.

This is an appeal from the order of the special inquiry officer finding respondent deportable upon the ground stated above.

Respondent, a 35-year-old divorced male, a native of Ireland and citizen of Great Britain, was admitted to the United States for permanent residence on December 14, 1954. On March 7, 1961, he was convicted of the crime of selling mortgaged property, and on February 27, 1961, he was convicted of the crime of drawing a check with insufficient funds in violation of Kan. Gen. Stat. 1949, ch. 21, sec. 554. The issue before us is whether the check conviction involves moral turpitude.

The pertinent sections of the Kansas Statutes follow:

It shall be unlawful for any person, corporation, or partnership, to draw, make, utter, issue or deliver to another any check or draft on any bank or depository for the payment of money or its equivalent, knowing at the time of the making, drawing, uttering or delivery of any such check or draft as aforesaid that he has no funds on deposit in or credits with such bank or depository with which to pay such check or draft upon presentation. (G.S. 1949, 21-554)

That in any case where a prosecution is begun under this act the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or judge that he has had an account in said bank upon which check or draft was drawn, thirty days next prior to the time said check or draft was delivered and that said check or draft was drawn upon said bank without intent to defraud the party receiving the same, and if the court shall so find, said action shall be abated and the defendant shall

be discharged upon paying into the court the amount of such check and the costs in said case. (G.S. 1949, 21-556)

The special inquiry officer found that moral turpitude was involved because *Matter of M—*, 9 I. & N. Dec. 743, required him to so find. Counsel contends that it is well settled that intent to defraud is not an element of the offense of passing a worthless check. The Service representative holds that intent to defraud is an element. Both rely upon *State v. Morris*, 372 P. 2d 282 (1962). We find the crime does not involve moral turpitude.

*Matter of M—, supra,* involved a worthless check conviction in the Virgin Islands under a law which did not expressly make intent to defraud an element of the crime; however, the Board found that such an intent was an element from the fact that conviction could be obtained only upon proof of knowledge on the part of the maker that he lacked funds in the bank to pay the check. The language of the opinion is broad and will require a re-examination when this section is again before us; however it is not controlling here since the question as to whether intent to defraud is an element of the crime before us has been passed upon by the courts of the jurisdiction involved.

Before we examine the decisional law of Kansas concerning the sections before us, it would be well to consider generally the issue of moral turpitude as it relates to a worthless check conviction. Moral turpitude is found when the intent to defraud is a necessary element of the crime. When conviction for the drawing of a worthless check is possible without proof of an intent to do evil, moral turpitude is not present because the conviction is possible even though the drawer may have intended to pay the check: one who draws a check knowing he has no funds to pay it but who expects to pay it, may be misguided, overly optimistic, and unsound in his judgment but he need not act with intent to cheat, and it is in the intent that moral turpitude lies. It may be, that in many worthless check cases, an intent to defraud is actually present; however, if the statute does not require that such an intent be established, moral turpitude is not involved in the conviction—it is the moral obliquity of a crime and not of the individual which is the test; if the crime as defined does not inherently involve moral turpitude, then, no matter how immoral the conduct which is the basis for the conviction, the crime does not involve moral turpitude (*Matter of Kinney*, Int. Dec. No. 1343).

We may now consider G.S. 1949, 21-555. The cases unanimously hold that an intent to defraud is not an element of the crime defined by G.S. 1949, 21-555. The crime is committed when a check is wilfully drawn with knowledge at the time that there are no funds on deposit to meet it. No proof need be made that payment was not intended or that there was an intent to deprive a person of his property

(see *State* v. *Avery*, 207 P. 838 (1922)). Despite the unanimity of the cases, G.S. 1949, 21–556 providing for abatement of an action, if the drawer of a worthless check establishes that "intent to defraud" was not an element, appears to raise a question as to whether fraud is not an element of the crime. The apparent inconsistency between the court cases and the language of 21–556 disappears when it is realized that the term "intent to defraud" as used in the section, is a term of art which refers not to proof of an intent to cheat, but to mere proof that a check was drawn with knowledge of the nonexistence of funds to pay it.

The two sections are discussed in *State* v. *Morris, supra,* cited by both counsel and the Service representative in support of their respective positions; for this reason, and because it is one of the latest expressions of the court on the matter we shall set forth in detail the court's statement.

[3] State v. Avery, 111 Kan. 588, 589, 207 P. 838, 23 A.L.R. 453, is the landmark case which construed and applied the statutes under which the defendant was convicted. It was there held that an *intent to defraud* was not an element of the offense and was not essential to the validity of the statute (G.S. 1949, 21–554). Whatever the state of mind of the defendant may be technically called, he must have knowledge that he cannot meet the check when presented for payment and he must act willfully. In the opinion it was said:

"* * * The worthless check must be willfully drawn, knowing at the time there are no funds on deposit to meet it. Beyond that, the legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive, or moral turpitude of the doer. * * *

"* * * The purpose of the statute was to discourage overdrafts and resulting bad banking (Saylors v. [State] Bank, 99 Kan. 515, 518, 163 P. 454) to stop the practice of 'checkkiting,' and generally to avert the mischief to trade, commerce and banking which the circulation of worthless checks inflicts. Although the statute tends to suppress fraud committed by the worthless-check method, the evils referred to are all quite distinct from those consequent on fraud, and the statute is to be regarded as creating a new and distinct offense. * * *"
(111 Kan. 1.c. 590, 591, 207 P. 1.c. 839).

\*     \*     \*     \*     \*     \*     \*

In State v. Gillen, 151 Kan. 359, 99 P. 2d 832, the defendant there made the argument that if intent to defraud was an element of the abatement statute (G.S. 1949, 21–556), then it must be an element of the insufficient funds statute (G.S. 1949, 21–554), since, he argued, "that if intent is an element in one instance it is in another." This court disposed of the contention by saying:

"* * * The question of whether intent was to be an element was for the legislature. We are satisfied the Avery case correctly disposes of the matter of intent as an element of the crime of which appellant was charged and convicted." (151 Kan. 1. c. 363, 99 P. 2d 1. c. 835.)

[5] The purpose of the legislature in passing the abatement statute (21–556) was to give a right to any person who made an innocent mistake in issuing a check which is dishonored upon presentation by reason of insufficient funds with which to pay it, to correct his mistake and thus avoid any record of a criminal prosecution. Whatever contradiction there may be between the insufficient fund

681

check statute (21–554) and the abatement statute (21–556), we think it apparent from the Avery and Gillen decisions that the so-called intent to defraud was construed to be present whenever money, property or other thing of value was parted with by the person to whom the check was given, and that it is incumbent upon the defendant to negate that intent by showing that he had no intention to willfully issue the check, knowing at the time he had no funds on deposit in the bank to pay it upon presentation.

Since it is clear that an intent to defraud, that is, an intent to cheat or deprive a person of his property, is not an element of the crime for which respondent was convicted, moral turpitude is not involved in his conviction. The record does not establish respondent has been twice convicted for two crimes involving moral turpitude; the appeal must be sustained.

**ORDER:** It is ordered that the appeal be and the same is hereby sustained and that the proceedings be terminated.