**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1967**

_____

JOSÉ RAFAEL SALAZAR,

           Petitioner,

    v.

MERRICK B. GARLAND, Attorney General,

           Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Argued:  October 28, 2022                   Decided:  January 3, 2023

_____

Before GREGORY, Chief Judge, and AGEE and DIAZ, Circuit Judges.

_____

Petition denied by published opinion.  Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Agee joined.

_____

**ARGUED:**  Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner.  Robbin Kinmonth Blaya, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Rachel S. Ullman, THE LAW OFFICE OF RACHEL S. ULLMAN, PC, Rockville, Maryland, for Petitioner.  Brian M. Boynton, Acting Assistant Attorney General, Kiley Kane, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

DIAZ, Circuit Judge:

José Rafael Salazar, a native and citizen of Mexico, seeks review of the denial of his petition for cancellation of removal.  The Board of Immigration Appeals determined that Salazar was ineligible for cancellation of removal because he was convicted of a crime involving moral turpitude: identity theft under Virginia law, which explicitly includes "intent to defraud" as an element.  Va. Code Ann. § 18.2-186.3(A)(2).  On appeal, Salazar contends the statute could be—and in his case, was—applied to crimes that don't involve moral turpitude.

We conclude that subsection (A)(2) of the Virginia identity-theft statute qualifies as a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii), and that the Board didn't abuse its discretion in deciding Salazar's case in a single-member opinion.  We accordingly deny the petition for review.

I.

Salazar, a 52-year-old Mexico native, entered the United States without documentation in 1991 and has remained here since.  Seeking to refinance the mortgage on his Maryland residence, Salazar obtained a loan from Wells Fargo in 2006, completing an application using a social security number that he said he "made up."  *Salazar v. Commonwealth*, 789 S.E.2d 779, 781 (Va. Ct. App. 2016).  The number in fact belonged to Virginia resident Christian Childers, who began receiving mail addressed to Salazar about the loan.

2

Salazar was convicted in a bench trial of violating Va. Code Ann. § 18.2-186.3(A)(2), the state's identity-theft statute, which at the relevant time provided:

> It shall be unlawful for any person, without the authorization or permission of the person or persons who are the subjects of the identifying information, with the intent to defraud, for his own use or the use of a third person, to . . . [o]btain goods or services through the use of identifying information of such other person.

Va. Code Ann. § 18.2-186.3(A)(2) (amended 2007).

The Court of Appeals of Virginia affirmed Salazar's conviction in 2016. *Salazar*, 789 S.E.2d at 780. The court held there was sufficient evidence that Salazar "intend[ed] to defraud" Wells Fargo because he "*intentionally* filled out and submitted a loan application using a social security number that was not his," and "this fact alone" fulfilled the statute's intent element. *Id*. at 784 (emphasis in original). The court also rejected Salazar's argument that Wells Fargo hadn't relied on the social security number in deciding to issue the loan, finding that the statute had no such reliance requirement. *Id.* at 784–85.

Around the same time, the Department of Homeland Security initiated removal proceedings against Salazar under 8 U.S.C. § 1182(a)(6)(A)(i). Salazar conceded removability and applied for cancellation of removal. After the Virginia appellate court affirmed Salazar's conviction, the Department moved to pretermit Salazar's application because he'd been convicted of a "crime involving moral turpitude."[1] Salazar opposed the

---

[1] A noncitizen who is convicted of a crime involving moral turpitude isn't eligible for cancellation of removal. 8 U.S.C. §§ 1182(2)(a)(i), 1229b(1)(C).

3

motion, arguing that unwittingly providing another's social security number to obtain a loan wasn't a crime involving moral turpitude.

At a hearing before the immigration judge ("IJ"), Salazar reiterated that he "just came up" with the social security number. A.R. 286. He also testified that his sister had been kidnapped in Mexico and that he feared he and his family would also be kidnapped if they were removed there.

The IJ pretermitted Salazar's application for cancellation of removal. Citing Board precedent that fraud crimes involve moral turpitude, the IJ found that "fraud is inherent" in the offenses criminalized by Va. Code Ann. § 18.2-186.3. A.R. 99. So the IJ concluded that Salazar's identity-theft conviction qualified as a crime involving moral turpitude.

During Salazar's appeal, we decided *Nunez-Vasquez v. Barr*, 965 F.3d 272 (4th Cir. 2020), holding that convictions under a different subsection of the identity-theft statute were not categorically crimes involving moral turpitude. *Id.* at 287. In that case, the noncitizen was convicted under subsection (B1) of the Virginia statute, which provides that "[i]t shall be unlawful for any person to use identification documents or identifying information of another person, whether that person is dead, or alive, or of a false or fictitious person, to avoid summons, arrest, prosecution, or to impede a criminal investigation." Va. Code Ann. § 18.2-186.3(B1). We noted that this subsection might apply to a defendant who misidentifies himself to a store manager investigating a shoplifting incident, for example, or a defendant who used the identifying information of a fictitious person without the intent to "cause loss to anyone"—neither of which involved moral turpitude. *Nunez-Vasquez*, 965 F.3d at 284-85.

4

In Salazar's case, however, the Board affirmed the IJ's decision in an unpublished opinion written by a single member. Accounting for our decision in *Nunez-Vasquez*, the Board first found that § 18.2-186.3 was divisible, with each subsection setting out alternate elements of the offense. A.R. 5. The Board then took a "peek at the record documents" to conclude that Salazar was convicted of violating subsection (A)(2), so *Nunez-Vasquez* didn't control his case. *Id.* (citing *Mathis v. United States*, 579 U.S. 500, 518 (2016)).

Because subsection (A)(2) "explicitly requires 'intent to defraud' and involves reprehensible behavior," the Board held, it was a crime involving moral turpitude. *Id.* And given the statute's clear reference to "intent to defraud," the Board wasn't persuaded by Salazar's argument that his conviction was "more akin to deception than fraud." *Id.*

This petition followed.

## II.

When, as here, the Board affirms an IJ's decision without adopting its reasoning, we confine our review to the opinion of the Board. *Cucalon v. Barr*, 958 F.3d 245, 249 (4th Cir. 2020). And we review the Board's legal determinations de novo. *Nunez-Vasquez*, 965 F.3d at 279.

On appeal, Salazar argues that Va. Code Ann. § 18.2-186.3(A)(2) criminalizes some conduct that isn't morally turpitudinous, or (in the alternative) that the Board violated its own regulations by not referring his case to a three-member panel. We disagree.

5

A.

1.

We first consider whether the Board erred in concluding that Salazar's identity-theft conviction was categorically a crime involving moral turpitude. Resolving this issue requires us to answer "two interpretive questions." *Nunez-Vasquez*, 965 F.3d at 279. First, we determine what "moral turpitude" means in the Immigration and Nationality Act, deferring under *Chevron*[2] to the agency's reasonable construction of the term. *Id*. Second, we determine whether the Virginia statute necessarily involves morally turpitudinous conduct. *Id*. We don't defer to the Board on this question.

We apply the categorical approach to determine whether a state offense qualifies as a crime involving moral turpitude, looking to the elements of the offense rather than the noncitizen's particular conduct. *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018). An offense qualifies as a crime involving moral turpitude "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013). If a state's appellate courts have interpreted the statute, "that interpretation constrains our analysis of the elements of state law." *Castillo v. Holder*, 776 F.3d 262, 268 (4th Cir. 2015); *see also id*. at 286 n.3 (noting that where the state's highest court has not weighed in, the intermediate state appellate decisions "constitute the next best indicia of what state law is").

---

[2] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984).

We tweak the categorical approach slightly in cases involving "divisible" statutes. A divisible statute sets out "multiple, alternative elements" of a crime, effectively creating several different crimes. *Mathis*, 579 U.S. at 513 n.4. Faced with a divisible statute, we may review a limited universe of documents besides the statute to determine which of the statutory offenses undergirded the conviction. *Descamps*, 570 U.S. at 265. But we're still required to examine only the elements of that offense, not the facts of the noncitizen's conviction, to determine whether the offense is a crime involving moral turpitude. *See id.* at 263.

### 2.

Salazar's conviction arises under a previous version of the Virginia identity-theft statute, Va. Code Ann. § 18.2-186.3, which consolidated several different offenses. A defendant may violate this statute by, for example, obtaining identification documents in another person's name, accessing identifying information while impersonating a law-enforcement officer, or using documents of a "false or fictitious person" to avoid summons, arrest, or prosecution. Va. Code Ann. § 18.2-186.3(A)(3), (A)(4), (B1).

We're satisfied that § 18.2-186.3 is a divisible statute and that Salazar was convicted under subsection (A)(2). Salazar doesn't dispute either point. We're thus tasked with determining whether all the conduct prohibited by subsection (A)(2), including the least culpable conduct, is morally turpitudinous.

### 3.

The Immigration and Nationality Act doesn't define "crimes involving moral turpitude," so we look to the Board's reasonable interpretation of the term. The Board has

7

defined a crime involving moral turpitude as one involving conduct that "shocks the public conscience as being inherently base, vile, or depraved." *Ramirez v. Sessions*, 887 F.3d 693, 704 (4th Cir. 2018). This definition has two parts: a morally culpable mental state and morally reprehensible conduct. *Id*. To meet the mens rea requirement, "the crime must have, as an element, an intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur." *Id*. To meet the actus reus requirement, the crime must violate not only the statute but also "independently violate[] a moral norm." *Id*.

The Board held that subsection (A)(2) of the Virginia statute met both requirements because it explicitly requires an "intent to defraud," and "[c]rimes that require intent to defraud are also crimes involving moral turpitude." A.R. 5 (citing *Matter of Zaragoza-Vaquero*, 26 I. & N. Dec. 814, 816 (BIA 2016)); *see also Jordan v. De George*, 341 U.S. 223, 229 (1951) (noting that courts have, "without exception," included fraud crimes as "within the scope of moral turpitude").

Salazar doesn't dispute that "intent to defraud" is an element of the statute. But he argues that Virginia courts have interpreted the element more broadly than the Board, pointing to his own state appellate court case as a prime example. In his case, he contends, the Court of Appeals interpreted "intent to defraud"—which involves an intent to "cheat or deprive a person of his property"—as something more akin to "intent to deceive," which involves an intent to merely lie to the victim. Petitioner's Br. at 32. He claims that because the court didn't consider whether Salazar "intended to deprive the bank of the money it lent him," it at most found that he intended to deceive Wells Fargo.

8

We disagree that the Virginia courts' interpretation of "intent to defraud" diverges from the Board's. Salazar didn't intend to "merely lie" to Wells Fargo: His misrepresentation had the material end of obtaining a loan. Even if Salazar planned to make his loan payments, he still meant to "deprive" the bank of the loan funds by way of deception. *Cf. United States v. Colton*, 231 F.3d 890, 907 (4th Cir. 2000) (in bank fraud context, finding "scheme to defraud" where defendants misled lender when obtaining loan).

A borrower's "intent to repay eventually is irrelevant to the question of guilt for fraud." *United States v. Allen*, 491 F.3d 178, 186 (4th Cir. 2007). So the appellate court's interpretation of "intent to defraud" in *Salazar* tracks the Board's understanding of the term: The court found that Salazar intended to use deceit to deprive Wells Fargo of loan funds.

Salazar's citations to three 1960s Board decisions are unpersuasive. In *Matter of Bailie*, 10 I. & N. Dec. 679 (BIA 1964), the Board held that a Kansas statute that criminalized drawing a check with insufficient funds was not a crime of moral turpitude. The Board noted that the term "intent to defraud" as used in that statute is a "term of art which refers not to proof of an intent to cheat, but to mere proof that a check was drawn" with knowledge of insufficient funds. *Id.* at 681. But Salazar points to no evidence that "intent to defraud" is a term of art in the Virginia statute. And *Matter of Colbourne*, 13 I. & N. Dec. 319 (BIA 1969), another check-withdrawal case, is distinguishable because the statute didn't explicitly require "intent to defraud." *Id.* at 320.

9

Finally, in *Matter of Kinney*, 10 I. & N. Dec. 548 (BIA 1964), the Board appeared to suggest that obtaining goods under false pretenses didn't involve moral turpitude because the buyer may also intend to pay for the goods. *Id.* at 549–50. We question whether this decision is still good law, as intervening precedent has clarified that "crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." *De George*, 341 U.S. at 232; *see also Kporlor v. Holder*, 597 F.3d 222, 225 (4th Cir. 2010); *Matter of Bart*, 20 I. & N. Dec. 436, 437 (BIA 1992). But even if it is, the statute in *Kinney* also didn't include an explicit "intent to defraud" element, so it isn't directly comparable to the Virginia statute. 10 I. & N. Dec. at 549.

In all, the Virginia appellate court's interpretation of "intent to defraud" reflects the Board's. So because subsection (A)(2) of the Virginia statute has "intent to defraud" as an element, the Board didn't err in declaring it a crime involving moral turpitude.

### 4.

Salazar offers several further arguments that the least of the acts criminalized by subsection (A)(2) doesn't involve moral turpitude, but none are availing.

First, he says that someone can violate subsection (A)(2) by "misleading a private person" rather than a government official. Petitioner's Br. at 36–37. True, but defrauding a private individual may be just as inherently base, vile, or depraved as defrauding the government. And in *Nunez-Vasquez*, we noted that either harm to the government or fraud can provide the basis for a finding of moral turpitude; both are not required. 965 F.3d at 286.

10

Second, Salazar notes that he was convicted for using a social security number he made up, and did not "intend[] harm to others." Petitioner's Br. at 38 (citing *Nunez-Vasquez*, 965 F.3d at 285 n.8). But while Salazar may not have intended to defraud Childers, the appellate court found that he had the intent to defraud Wells Fargo. *Salazar*, 789 S.E.2d at 784. And in the loan-fraud context, "harm is inflicted regardless of whether the customer intends to make timely payments or whether or not he eventually makes them." *Tijani v. Holder*, 628 F.3d 1071, 1076 (9th Cir. 2010). So unlike *Nunez-Vasquez*, this was a case in which the least culpable conduct still involved "intended harm to others." *Nunez-Vasquez*, 965 F.3d at 285 n.8.

Third, Salazar points out that subsection (A)(2) doesn't require the recipient of the identifying information to rely on it or "suffer any harm as a result." Petitioner's Br. at 39–40 (citing *Salazar*, 789 S.E.2d at 784–85). But a lack of reliance by or ultimate harm to the recipient doesn't bear on whether the defendant had the "intent to defraud." The moral turpitude analysis looks to the defendant's "culpable mental state and reprehensible conduct"—not the fraud victim's subsequent conduct. *See Sotnikau v. Lynch*, 846 F.3d 731, 736 (4th Cir. 2017).

Fourth, in his initial briefing, Salazar noted that the current text of subsection (A)(2)—prohibiting the use of another's identifying information to obtain "money, credit, loans, goods, or services"—could apply to someone who makes up a social security number to obtain a job (and thereby obtain "money"). Petitioner's Br. at 41. After oral argument, however, Salazar's counsel submitted a letter clarifying that Salazar was convicted under a version of the statute that didn't include the reference to "money," so this argument

11

couldn't salvage his case. And in any event, Salazar hasn't pointed to any cases in which the state courts applied the statute to a defendant who used another's information to apply for a job. So he hasn't shown that there exists a "realistic probability, not a theoretical possibility," that Virginia would apply the statute this way. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

Having dispensed with Salazar's counterarguments, we conclude that the Board didn't err in finding that Salazar's conviction for Va. Code Ann. § 18.2-186.3(A)(2) is categorically a crime involving moral turpitude, and we deny his petition for review as to this issue.

### B.

Alternatively, Salazar argues that the Board erred by failing to refer his case to a three-member panel. We examine whether the Board's decision to streamline a case was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) (citing 5 U.S.C. § 706(2)(A)).[3]

An appeal to the Board is by default assigned to a single member unless it "meets the standards for assignment to a three-member panel under [8 C.F.R. § 1003.1(e)(6)]."

---

[3] We have jurisdiction to review the Board's decision to streamline Salazar's case. *Quinteros-Mendoza*, 556 F.3d at 164. And this jurisdiction survives the enactment of 8 C.F.R. § 1003.1(e)(9), which provides that the Board's streamlining regulations are "internal agency directives . . . not intended to create any substantive or procedural rights to a particular form of Board decision." An "internal executive branch regulation" can't operate to "strip Article III courts of their statutorily granted jurisdiction." *United States v. Hamidullin*, 888 F.3d 62, 71–72 (4th Cir. 2018).

8 C.F.R. § 1003.1(e). Under that regulation, a case "may only be assigned for review" by a panel if it presents at least one of seven circumstances. *Id.* § 1003.1(e)(6). Salazar argues that his case implicates one of those circumstances: "The need to resolve a complex, novel, unusual, or recurring issue of law or fact." *Id.* § 1003.1(e)(6)(vii).

We find no abuse of discretion in the Board's decision to assign this case to a single-member panel. The issue was not "complex, novel, or unusual": It was squarely resolved by the Board's precedent for crimes with "intent to defraud" as an element. The Board considered (and was unpersuaded) by the argument that Salazar's offense was "more akin to deception than fraud," A.R. 5, and we agree with its conclusion. Nor is there evidence that the relatively narrow issue of whether subsection (A)(2) of the Virginia statute involved moral turpitude is a "recurring" question before the Board. We therefore deny Salazar's petition as to this issue as well.

*PETITION DENIED*

13