**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1700**

DOLORES ORTEGA-CORDOVA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

------------------------------

THE SEX WORKERS PROJECT OF THE URBAN JUSTICE CENTER,

Amicus Supporting Petitioner.

On Petition for Review of Order of the Board of Immigration Appeals.

Argued: May 9, 2024                                    Decided: July 16, 2024

Before DIAZ, Chief Judge, and NIEMEYER and RICHARDSON, Circuit Judges.

Petition denied by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Diaz and Judge Richardson joined.

**ARGUED:** Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Taryn Lee Arbeiter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Aadhithi

Padmanabhan, UNIVERSITY OF MARYLAND CAREY SCHOOL OF LAW, Baltimore, Maryland, for Amicus Curiae. **ON BRIEF:** Brian P. Casson, NORTHERN VIRGINIA IMMIGRATION LAW FIRM PLLC, Falls Church, Virginia, for Petitioner. Brian M. Boynton, Principal Deputy Assistant Attorney General, Walter Bocchini, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Grace Rudatsikira, Supervised Law Student, Sydney Wilson, Supervised Law Student, Federal Appellate Immigration Clinic, UNIVERSITY OF MARYLAND CAREY SCHOOL OF LAW, Baltimore, Maryland, for Amicus Curiae.

––––––––––––––

NIEMEYER, Circuit Judge:

The Immigration and Nationality Act makes available to aliens who would otherwise be removed from this country the possible relief of "cancellation of removal" if they are able to establish that they satisfy certain strict eligibility requirements. *See* 8 U.S.C. § 1229b(b)(1); *see also id.* § 1229a(c)(4)(A). But an alien is ineligible for such relief if he has been convicted of, among other offenses, "a crime involving moral turpitude" punishable by "a sentence of one year or longer." 8 U.S.C. § 1227(a)(2)(A)(i). Dolores Ortega-Cordova, a native and citizen of El Salvador who was subject to removal because he entered the country without inspection, was denied cancellation-of-removal relief because he had been convicted of soliciting prostitution, in violation of Virginia Code § 18.2-346(B) (2012). The question now presented is whether that crime involves moral turpitude. We conclude that it does, and accordingly deny Ortega-Cordova's petition for review.

I

Ortega-Cordova entered the United States without inspection in 2002. Some 10 years later, in September 2012, he was arrested in Norfolk, Virginia, and charged with solicitation of prostitution, in violation of Virginia Code § 18.2-346(B) (2012). After pleading guilty to the charge in December 2012, he was sentenced to 90 days' imprisonment, with 86 days suspended, and was required to pay a fine.

Shortly after Ortega-Cordova's arrest, the Department of Homeland Security initiated removal proceedings against him. While Ortega-Cordova conceded that he was

3

subject to removal, he applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1). Following a hearing, the Immigration Judge ("IJ") denied relief because Ortega-Cordova had failed to demonstrate, as necessary to establish his eligibility for such relief, *see id*. § 1229b(b)(1)(C), that he had not been convicted of a crime listed in § 1227(a)(2) — namely, as applicable here, "a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed," *id*. § 1227(a)(2)(A)(i). Relying on the position "long held" by the Board of Immigration Appeals ("BIA") that prostitution and prostitution-related offenses were "morally turpitudinous," the IJ concluded that the Virginia solicitation law similarly criminalized conduct "that inherently involves moral turpitude," citing *Matter of W–*, 4 I. & N. Dec. 401 (BIA 1951); *Matter of Lambert*, 11 I. & N. Dec. 340 (BIA 1965); *Matter of P–*, 3 I. & N. Dec. 20 (BIA 1947). Accordingly, the IJ denied Ortega-Cordova's application for relief and ordered him removed to El Salvador.

On appeal, the BIA, acting through a single member, affirmed the IJ's ruling and dismissed Ortega-Cordova's appeal. The BIA noted that Ortega-Cordova bore "the burden to prove he is eligible for . . . cancellation of removal," and while acknowledging "that there is an evolving understanding of what society considers contrary to the accepted rules of morality," it concluded that Ortega-Cordova had "not established that the community no longer deems it reprehensible to solicit sex for a fee." The BIA explained, "What has made solicitation of prostitution reprehensible is not the sexual act itself, but the commercial, exploitative, [and] transactional nature of the act." And it supported its position by noting that not only had it "consistently held that prostitution, and/or an act in furtherance of prostitution, [was] a [crime involving moral turpitude]" but also that

4

"[e]very federal court of appeals to review the question ha[d] come to the same conclusion."

From the BIA's decision dated May 31, 2022, Ortega-Cordova filed this petition for review.

## II

The Immigration and Nationality Act offers the relief of cancellation of removal to certain aliens who are otherwise subject to removal from the country but not if the person has been convicted of, among other offenses, a crime involving moral turpitude that is punishable by a sentence of least one year.   8 U.S.C. § 1229b(b)(1)(C); *id.* § 1227(a)(2)(A)(i); *see generally Hernandez v. Holder*, 783 F.3d 189 (4th Cir. 2015).

The BIA denied Ortega-Cordova cancellation-of-removal relief, concluding that soliciting prostitution was indeed a crime involving moral turpitude.  Ortega-Cordova contends, however, that the crime of which he was convicted was not, categorically, one involving moral turpitude.  Under the categorical approach, as he correctly notes, we look to the fact of conviction and the elements of the offense at issue, rather than the facts giving rise to the conviction, to determine whether, as a matter of law, "all the conduct prohibited by" the crime of conviction "is morally turpitudinous."  *Salazar v. Garland*, 56 F.4th 374, 378 (4th Cir. 2023).

Relying on the categorical approach, Ortega-Cordova makes two main arguments. First, focusing on the least of the acts criminalized, as required by the categorical approach, he notes that the scope of conduct criminalized by the Virginia statute includes consensual

5

conduct between two adults. Thus, as he explains, the statute covers the solicitation of "a prostitute who was indisputably acting of his or her own free will," rather than one who was, for example, ensnared in a human trafficking ring. He reasons further that "numerous scenarios exist in which perfectly reputable persons might offer money" to a consenting adult "for sexual services," offering hypotheticals involving persons who, whether "due to disability or other circumstances," "may be unable to achieve sexual gratification with another individual without providing financial compensation" to that other person. He concludes that such conduct, although prohibited by the Virginia law, is not "inherently base, vile, or depraved," quoting *Mohamed v. Holder*, 769 F.3d 885, 887 (4th Cir. 2014), and therefore is not morally turpitudinous.

Second, he notes that a "vigorous debate has occurred for decades over whether [prostitution] should be criminalized" and that "large swaths of the public believe that prostitution between consenting adults should be legalized," citing for support a poll in which 49% of respondents indeed indicated that they thought prostitution between consenting adults should be legal. He argues that "[t]he mere existence of this debate, as well as the fact that prostitution is legal in many countries, demonstrates that such conduct is not inherently reprehensible." For this reason too, he contends that the solicitation of prostitution may not be deemed "inherently base, vile, or depraved" and therefore is not morally turpitudinous.

The question of whether a crime involves moral turpitude is not new, either to the BIA or to our court. We have "developed a sound definition of moral turpitude" that is consistent with BIA's — namely, a crime involves moral turpitude if it "involv[es]

6

'behavior that shocks the public conscience as being inherently base, vile, or depraved.'" *Gomez-Ruotolo v. Garland*, 96 F.4th 670, 678 (4th Cir. 2024) (quoting *Ramirez v. Sessions*, 887 F.3d 693, 704 (4th Cir. 2018)).  To qualify, a crime must require proof of (1) a sufficiently "culpable mental state," namely, either "an intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur," *Ramirez*, 887 F.3d at 704, and (2) an *actus reus*, *i.e.*, conduct, "that not only violates [the] statute but also independently violates a moral norm . . . and thus gives rise to 'turpitude' — meaning the debasement of the norm or the value," *Mohamed*, 769 F.3d at 888; *see also Gomez-Ruotolo*, 96 F.4th at 678.  In this case, Ortega-Cordova focuses his challenge on the latter of the two requirements.

Thus, we are presented with the question of whether the crime of soliciting prostitution, as prohibited by Virginia law at the time of Ortega-Cordova's conviction, categorically involves conduct that debases a moral norm.  And the conduct prohibited by the relevant version of the Virginia solicitation statute was "offer[ing] money or its equivalent to another for the purpose of engaging in sexual acts . . . and thereafter do[ing] any substantial act in furtherance thereof."  Va. Code Ann. § 18.2-346(B) (2012).

As the cases show, there remains a societal consensus that prostitution and conduct facilitating prostitution violate a moral rule that judges the commoditization of sex to be at the expense of both participants' dignity and humanity and thus to be wrong or bad.  *See Rohit v. Holder*, 670 F.3d 1085, 1090 (9th Cir. 2012) (reasoning that "[p]rostitution, . . . and solicitation thereof, always involves sexual exploitation," such that "solicitation of prostitution is always base, vile, and depraved"); *Gomez-Gutierrez v. Lynch*, 811 F.3d

7

1053, 1059 (8th Cir. 2016) ("[T]he Board did not err in deciding [that the noncitizen's] solicitation conviction constituted a crime involving moral turpitude"); *Reyes v. Lynch*, 835 F.3d 556, 560 (6th Cir. 2016) (holding that the BIA had reasonably concluded that prostitution was a crime involving moral turpitude and that "there [was] no reason to consider the solicitation of prostitution to be significantly less base, vile, and depraved than the act of prostitution itself" (cleaned up)); *Florentino-Francisco v. Lynch*, 611 F. App'x 936, 939 (10th Cir. 2015) ("[P]rostitution has been deemed 'hurtful to the cause of sound private and public morality and to the general well-being of the people.' Prostitution, and derivatively solicitation of prostitution, are thus inherently wrong, not just wrong because of a statutory proscription" (quoting *United States v. Bitty*, 208 U.S. 393, 401 (1908))); *Alarcon-Vega v. U.S. Att'y Gen.*, No. 20-13038, 2021 WL 3912268, at *3 (11th Cir. 2021) (per curiam) ("We have no trouble concluding that agreeing to engage in sexual contact for consideration — monetary or otherwise — involves an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man" (cleaned up)). And the BIA has joined that consensus. *See, e.g.*, *Matter of Ortega-Lopez*, 27 I. & N. Dec. 382, 386 (BIA 2018) (recognizing that "[t]he minimum conduct covered by" prostitution and related crimes "generally relates to sexual acts committed by consenting adult" and concluding that such crimes are "morally reprehensible, not on account of the presence of harm or the need to protect a vulnerable segment of society, but because of the socially degrading nature of commercialized sexual services").

8

There are a variety of reasons that can lead society to arrive at that consensus. The moral judgment can be that exchanging money for sex exploits the prostitute as an instrument or chattel to be used by a person often hardly known to the prostitute, solely for that person's sexual pleasure. In that sense, such a transaction, which is essentially commercial, can be understood to extricate and isolate the sexual act from its much broader role as a component of one of the deepest and most profound human relationships — one that is held together by a wide array of positive bonds, including love, joy, partnership, pleasure, sharing privacy and intimacy, and surrendering to each other the most private human aspects. Under this understanding, prostitution and conduct that facilitates prostitution not only demeans the participants but also the foundational relationship so meaningful to humankind. Also, there can be concern that the dehumanizing aspect of prostitution and conduct facilitating prostitution often spills over into other undesirable and bad conduct, including illicit drug use, physical and mental abuse, and indeed violence. At bottom, society, including Virginia in this case, has recognized, through duly enacted laws, that prostitution, as well as conduct facilitating prostitution, is a social scourge that *ought* therefore to be prohibited, both as a violation of law and as a violation of one of society's moral norms.

Ortega-Cordova argues nonetheless that times are changing and that our society may no longer regard prostitution and conduct facilitating prostitution as violating a moral norm. While he concedes that prostitution remains illegal in all States except Maine (where solicitation is still a crime) and a few counties in Nevada, he emphasizes "that prostitution is legal in many Western countries" and that a "vigorous debate has occurred for decades

9

over whether it should be [de]criminalized" in the United States.  From this observation, he argues that "the existence of [a] genuine debate over whether [such conduct] should be legalized — both globally and in the United States — all but establishes that" prostitution, and the solicitation thereof, is "not 'inherently base, vile, or depraved.'"

But such an argument based on the robust debate about the *decriminalization* of prostitution does not indicate that the broad societal consensus as to the *immorality* of prostitution and solicitation has been materially eroded.  Indeed, there are many logical reasons why a person might support decriminalizing prostitution while still believing that the conduct violates a moral norm.  A person, for instance, might believe that prostitution is immoral but place a higher value on the health and safety of those who engage in prostitution and conclude that decriminalization and regulation would better advance those interests.  Or a person might personally view the solicitation of prostitution as inherently base but nonetheless conclude that the law should not criminally punish sexual activity between two consenting adults.  These are not inconsistent views, and so the mere existence of an ongoing decriminalization debate does not undermine our conclusion that when a jurisdiction, such as Virginia here, does decide to make it unlawful for one person to offer to pay another for sex, that crime is one that categorically involves "moral turpitude."

Ortega-Cordova also argues that "even assuming that it is generally reprehensible for two consenting adults to exchange money for sex, numerous scenarios exist in which perfectly reputable persons might offer payment for sexual services."  He asks us, in this regard, to imagine sympathetic situations in which a person with a disability or another

10

extenuating circumstance is unable to find a willing sexual partner without offering financial compensation.

Yet, while the categorical approach requires us to consider the *minimum conduct* criminalized by the elements of the statute, Ortega-Cordova requests that we also consider potential *motives* for paying for sex. In other words, his argument does not address the scope of the conduct that was criminalized by § 18.2-346(B) (2012) but rather highlights reasons *why* some people might choose to engage in the conduct that the statute prohibits. Our extensive jurisprudence applying the categorical approach in this context, however, has never looked to the potential justifications for engaging in prohibited conduct. For instance, we recently held that a Virginia identity-theft offense, which included an intent to defraud as an element, categorically qualified as a crime involving moral turpitude, even though one could imagine scenarios in which that offense could be committed for a "good" reason (to prevent one's children from being evicted, for example). *See Salazar*, 56 F.4th at 375. Just so here. Regardless of motive, the statutorily prohibited conduct remains contrary to a well-recognized moral norm against treating sex with another person as a mere commercial transaction.

Accordingly, we affirm the decision of the BIA that Ortega-Cordova's prior conviction for solicitation of prostitution, in violation of Virginia Code § 18.2-346(B) (2012), qualifies as a conviction for a crime involving moral turpitude.

11

III

In addition to his main argument that solicitation of prostitution should not be considered a crime involving moral turpitude, Ortega-Cordova raises two additional issues, each of which, he argues, justifies a remand to the BIA for further proceedings. We conclude otherwise, however.

A

First, after noting that 8 U.S.C. § 1227(a)(2)(A)(i) only applies to a conviction for a crime involving moral turpitude "for which a sentence of *one year or longer* may be imposed," Ortega-Cordova argues that the exception should be read to apply only to crimes punishable "by *more than one year*." (Emphasis added). This is so, he asserts, because legislative history shows that "Congress intended the provision to only apply to noncitizens convicted of a 'felony,'" and the federal definition of "felony" requires that the maximum available sentence be for *more* than a year. *See* 18 U.S.C. § 3559(a). Thus, the crime of conviction was not a felony, as a matter of federal law, because the Virginia statute authorized a sentence of *only up to one year's* imprisonment, not *more than one year.*

Although Ortega-Cordova concedes that he neither presented this issue in his opening brief nor exhausted it by raising it before the BIA, he nonetheless asks us to "remand for [the] BIA to consider it." Yet, he has identified no reason that would justify our taking the extraordinary step of remanding an unexhausted issue to the BIA for its consideration. Moreover, his argument flouts the clear and unambiguous language of § 1227(a)(2)(A)(i), which qualifies a statute that provides for a sentence of "one year or

12

longer." *See, e.g.*, *Singh v. Sessions*, 898 F.3d 720, 725 (7th Cir. 2018) ("The statutory phrase 'one year or longer' plainly encompasses *either* a sentence of one year *or* a sentence of longer than one year"). We therefore decline to remand the case to the BIA on this ground.

B

Ortega-Cordova also raises a procedural issue, arguing that the BIA abused its discretion by deciding his appeal by a single member, rather than referring his case to a three-member panel. But he does not show that he ever requested that his case be assigned to a three-member panel of the BIA, as he was authorized to do. He certainly could have included such a request in his notice of appeal of the IJ's decision. *See* 8 C.F.R. § 1003.3(b) (providing that "[a]n appellant who asserts that the appeal may warrant review by a three-member panel under the standards of § 1003.1(e)(6) may identify in the Notice of Appeal the specific factual or legal basis for that contention"). Having failed to request such a panel, Ortega-Cordova may not now argue that the BIA abused its discretion in failing to do so *sua sponte*. *See* 8 U.S.C. § 1252(d)(1) (providing that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"); *see also Tepas v. Garland*, 73 F.4th 208, 213 (4th Cir. 2023) (recognizing that § 1252(d)(1) represents "a mandatory claim-processing rule" and that a noncitizen's failure to comply with it constitutes "a basis for denying review of [an unexhausted] claim").

\* \* \*

For the reasons given, we affirm the decision of the BIA holding that Ortega-Cordova was ineligible, based on his prior conviction, for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1), and accordingly we deny his petition for review.

*PETITION DENIED*